UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LAWRENCE BEASLEY,

        Plaintiff,                    Case No. 2:20-cv-10

v.                                       Honorable Paul L. Maloney

BRENDA BUCHANAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues health services

provider Brenda Buchanan and nurse Ressie Stranaly. Plaintiff sues the Defendants in their individual and official capacities.

Plaintiff alleges that he injured his foot playing basketball on October 16, 2018. Defendant Buchanan saw Plaintiff's foot and acknowledged that it looked bad. Defendant Buchanan, however, did not order an x-ray. Plaintiff's medical record, which is summarized in the grievance response Plaintiff has supplied, indicate that Plaintiff's foot was bandaged with an ACE wrap, he was issued crutches, and given details for ice and meals "in." (ECF No. 1-1, PageID.18.) Plaintiff was also given aspirin and ibuprofen for pain relief. (Compl., ECF No. 1, PageID.8.)

Three days later, Plaintiff returned to health services. He was seen by a nurse. She agreed to schedule follow-up with a provider. The nurse assigned the referral to the provider a "routine" priority. For that reason, Plaintiff was put on the provider waiting list. Plaintiff claims he was also seen by Defendant Buchanan on that date.

Plaintiff returned to health services on October 26. On that date, according to Plaintiff, Defendant Buchanan ordered an x-ray. The nurse, however, also splinted the foot and continued the detail for crutches so Plaintiff could be mobile without putting weight on the foot.

The x-ray was taken on October 29; it revealed Plaintiff had suffered a nondisplaced fracture of the fifth metatarsal of the left foot. The proper treatment for that injury—splint, crutches, and no weight-bearing activity—was already in place. Plaintiff was x-rayed again on November 19 and December 17. The x-rays indicated appropriate healing of the fractured bone.

The crux of Plaintiff's complaint against Defendant Buchanan is that she did not order an x-ray immediately on October 16. Plaintiff describes that failure as "nothing less than neglect." (Compl., ECF No. 1, PageID.10.) Similarly, he describes the actions of the unnamed

2

nurse he saw on October 19, the nurse who prioritized his provider visit as "routine," as inappropriate.

Plaintiff also complains that the health care providers did not give him a bottom bunk detail. He claims that having to get up to and down from his top bunk was dangerous. He similarly complains that Defendant Stranaly denied his request for a wheelchair on November 17, when he informed her that using crutches was dangerous because of snow and ice build-up on the walkways.

At the end of his factual allegations, Plaintiff notes that he has filed grievances against some of the same litigants regarding another matter. He offers his belief that his grievances might be the reason health services "weren't so eager to help [him.]" (Compl., ECF No. 1, PageID.12.)

Plaintiff seeks a declaration that the Defendants have violated his rights, preliminary and permanent injunctive relief compelling the Defendants to answer for their neglect of him, and compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that Defendants' neglect of him constitutes cruel and unusual punishment in violation of the Eighth Amendment. Moreover, Plaintiff tacks on the possibility that Defendants have been neglectful in retaliation for Plaintiff's filing of grievances.

### III. Official capacity claims

A suit against an individual in her official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells*

*v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Therefore, the Court will dismiss Plaintiff's claims the suit for monetary relief against the Defendants in their respective official capacity.

An official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The exception, however, applies only if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)). Plaintiff does not allege ongoing failure to treat his foot injury. Indeed, it appears the injury has healed and no longer requires treatment. His request for injunctive relief is not prospective and, therefore, his request for such relief against the Defendants in their official capacities is barred by sovereign immunity. Plaintiff's requests for injunctive relief against the Defendants in their respective official capacities is also properly dismissed.

**IV.     First Amendment retaliation**

Plaintiff suggests that Defendants may have neglected him because he previously filed grievances against them. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor

in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002).

Plaintiff provides no information regarding the grievances he claims prompted the Defendants' neglect. It is not clear, therefore, whether Plaintiff has alleged protected conduct. Accepting, for purposes of this preliminary review, that Plaintiff's brief reference to filing one or more grievances is a sufficient allegation of protected conduct, and accepting that Defendant Buchanan's ten-day failure to x-ray Plaintiff or provide him a bottom bunk detail or Defendant Stranaly's refusal to provide Plaintiff a wheelchair detail might constitute "adverse action," Plaintiff's retaliation allegations still fall short.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely suggests the ultimate fact of retaliation in this action. He has not presented any facts to support his speculative allegation that Defendants retaliated against him because he filed a grievance. Accordingly, he fails to state a First Amendment retaliation claim.

## V. Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id*. at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id*. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however,

7

is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Measured against these standards, Plaintiff's allegations fail to state a claim. The treatment Plaintiff received was a far cry from "no treatment at all." He was immediately provided pain relievers, a wrap, ice, crutches, and an instruction to not bear weight on the foot. Other than a splint, that is exactly the treatment that ultimately healed the injury. Moreover, Plaintiff does

not claim that the ten-delay between the injury and the x-ray order—the time period during which he was without a splint—caused any detrimental effect.

Critically, Plaintiff offers no facts that support an inference that Defendants Buchanan and Stranaly were aware that Plaintiff was subject to a substantial risk of serious harm and that they consciously disregarded that risk. Plaintiff describes Defendants' conduct as neglectful. A claim that a medical professional failed to follow the appropriate standard of care, without more, is a state-law negligence claim. *Cox ex rel. Cox v. Bd. of Hosp. Managers for City of Flint,* 651 N.W.2d 356, 366-67 (Mich. 2002). Deliberate indifference requires more than that. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent. . . .does not state a valid claim. . . .under the Eighth Amendment."); *see also Flanory v. Bonn*, 604 F. 3d 249, 254 (6th Cir. 2010) ("Deliberate indifference 'entails something more than mere negligence.'"); *Brown*, 207 F.3d at 867 ("[T]he deliberate indifference standard 'describes a state of mind more blameworthy than negligence. . . .'"); *Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017) ("Deliberate indifference is a higher standard than negligence. . . ."). Even a showing of gross negligence will not suffice to show deliberate indifference. *See, e.g., Broyles v. Corr. Med. Serv., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) ("To satisfy the subjective component, the defendant must possess a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'"). Therefore, Plaintiff's allegations do not suffice to show that the Defendants were deliberately indifferent to his serious medical needs.

Plaintiff's allegations regarding Defendant Buchanan's failure to give him a bottom bunk detail and Defendant Stranaly's failure to give him a wheelchair detail might fall outside the confines of medical treatment. Whether or not those failures constitute deliberate indifference to his medical treatment needs, they might still be construed as being deliberately indifferent to his

safety. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). Even if Plaintiff's top bunk assignment and use of crutches in the snow carried some risk of harm, Plaintiff's allegations do not support the inference that Defendants knew Plaintiff was subject to a serious risk of injury or that they consciously disregarded such a serious risk.

Accordingly, Plaintiff has failed to state an Eighth Amendment claim against these Defendants.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

11

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: February 21, 2020 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge